**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| REBECCA EURES, | ) |
| THERESA FRITZ, | ) |
| DAVID BOWLING, | ) |
| RICK ALTMEYER, | ) |
| WILLIAM NORRIS, | ) |
| VICKIE BOHNE, | ) |
| REBECCA CLARK, | ) |
| HARRY J. DECKER, | ) |
| JUNE B. DECKER, | ) |
| LINDA L. CORBETT, | ) |
| MICHAEL ROSS, | ) |
| AVA ROSS, | ) |
| LINDA JACKSON, | ) |
| RHONDA HALLER, | ) |
| BETTY NOLOT, | ) |
| JENNIFER REILLY, | ) |
| KIMBERLY OBREMSKI, | ) |
| JEFF SEEWER, | ) |
| PATTY JO JAYNES c/o Janice Walthall, POA, | ) |
| JANICE WALTHALL, | ) |
| DENNIS COROLLA, | ) |
| GEORGE ROSS, | ) |
| CAROLYN ROSS, | ) |
| FRANK INMAN, | ) |
| PHILLIP SMITHPETER, | ) |
| CHARLES J. FRITZ, JR., | ) |
| ROBERT MADDEN, | ) |
| MARCIA MADDEN, | ) |
| BETTY HARPER, | ) |
| DEEDRA ANKROM, | ) |
| DON STITES, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 4:23-cv-00184-TWP-KMB |
| | ) |
| HAVENPARK MANAGEMENT, LLC, | ) |
| THE PINES OF NEW ALBANY, LLC, | ) |
| EMC PROPERTY & CASUALTY COMPANY, | ) |
| | ) |
| Defendants. | ) |

1

## ORDER GRANTING MOTIONS TO DISMISS

This matter is before the Court on Motions to Dismiss the Second Amended Complaint filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant EMC Property and Casualty Company ("EMC") (Filing No. 77), and by Defendants Havenpark Management, LLC and The Pines of New Albany, LLC (together, "Pines LLC") (Filing No. 81). Plaintiff Rebecca Eures ("Eures") initiated this action in state court alleging breach of contract, negligence, and fraud. On November 10, 2023, Pines LLC removed the case to this Court (Filing No. 1). The Complaint has been amended multiple times, and thirty additional Plaintiffs have been added.[1] For the following reasons, EMC's Motion to Dismiss and Pines LLC's Motion to Dismiss are **granted**.

## I.    BACKGROUND

### A.    Factual Background

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the Plaintiffs as the non-moving party. *See Bielanski v. Cnty. Of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Pines LLC is the owner of a mobile and manufactured home park known as "The Pines" located in New Albany, Indiana. (Filing No. 71 at 6). Pines LLC purchased the real estate and all the tenants' leases at The Pines mobile home community from R.O.L.L. LLC, on or about June 29, 2023. *Id.* at 8 ¶ 63. EMC is an Iowa property and casualty insurer doing business in the State of Indiana. *Id.* In the four years prior to the filing of the initial Complaint in this case, each Plaintiff

---

[1] The additional Plaintiffs are Theresa Fritz, Charles Fritz, Jr., William Norris, Vickie Bohne, David Bowling, Rick Altmeyer, Rebecca Clark, Harry J. Decker, June B. Decker, Linda L. Corbett, Michael Ross, Ava Ross, Linda Jackson, Rhonda Haller, Betty Nolot, Jennifer Reilly, Kimberly Obremski, Jeff Seewer, Patty Jo Jaynes, Janice Walthall, Dennis Corolla, George Ross, Carolyn Ross, Frank Inman, Phillip Smithpeter, Robert Madden, Marcia Madden, Betty Harper, Deedra Ankrom, and Don Sites (collectively, "Plaintiffs").

was the owner of a manufactured/mobile home and was a resident of The Pines mobile home park (Filing No. 71 at 2 ¶ 1).

On January 24, 2005, Eures executed a three-year lease commencing on February 1, 2005, for property located in The Pines. The lessor identified on the lease was non-party R.O.L.L. LLC, doing business as "The Pines Manufactured Home Community." (Filing No. 33-1). All the other Plaintiffs have leases of one to three years, with substantially similar terms and conditions. (Filing No. 71 at 8 ¶¶ 58–59).

Once the initial terms of the leases ended, the leases continued on year-to-year bases. *Id.* at 9–10 ¶ 71. In April of 2022, Pines LLC increased the rent for each tenant, *id.* at 10 ¶ 73, and billed the Plaintiffs for their monthly water usage. *Id.* at 10 ¶ 75. Pines LLC also changed other terms of the leases by adding new fines, penalties, and changes to the cost of utilities. *Id.* at 11 ¶ 78. Beginning at an unknown time and continuing to the present, improper drainage caused runoff and erosion to the lots rented to the Plaintiffs. *Id.* at 11 ¶ 78. The runoff caused the pedestals upon which Plaintiffs' mobile homes sit to begin shifting. *Id.* at 11 ¶ 81. Plaintiffs repeatedly notified Pines LLC of these issues, but Pines LLC prohibited Plaintiffs from making improvements to the foundations of their homes. *Id.* at 11 ¶ 82. Due to the shifting of the pedestals, Plaintiffs have incurred structural damages to their roofs, resulting in leaks and mold. *Id.* at 12 ¶¶ 83–84.

Eures notified Pines LLC of the shifting of the pedestals and obtained estimates to stabilize the pedestals and fix the damage to her home totaling $46,540.50. *Id.* at 12 ¶¶ 89–90. On November 3, 2022, Eures' attorney sent a letter to Pines LLC demanding that her home be repaired and the pedestals be stabilized. *Id.* at 12–13 ¶ 91. On January 25, 2023, EMC sent purported "experts" to examine the erosion under Eures' home. *Id.* at 13 ¶ 92. Photographs taken under Eures' home show clear evidence of erosion, visible and obvious to even a lay person. *Id.* at 13 ¶ 93.

In April 2023, Pines LLC and EMC, through their counsel, reported that EMC's experts concluded that there was no erosion and no shifting of the supports under Eures' home. *Id.* at 15 ¶ 95. However, Pines LLC advised that the experts did not put their opinions in writing. *Id.* at 15 ¶ 96. Pines LLC and EMC made *de minimis* offers to repair the damages to Eures' home but refused to stabilize the pedestals. Eures and other unnamed tenants have paid to have their homes repaired, but the continued erosion and shifting of the pedestals has caused further damage. *Id.* at 15 ¶ 98. Pines LLC has prohibited tenants from making improvements to the foundations of their homes, thereby preventing tenants from mitigating their damages. *Id.* at 15 ¶ 98.

**B.    Procedural History**

This case was initiated as a putative class action by Eures in the Floyd Superior Court (*see* Filing No. 1-2). Pines LLC then removed the case to federal court pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441 (*See* Filing No. 1 at 1).

Pines LLC filed its first motion to dismiss on December 18, 2023 (Filing No. 12). EMC filed its first motion to dismiss on January 12, 2024 (Filing No. 18). Then, Eures filed a motion for leave to file an amended complaint on January 29, 2024 (Filing No. 24). On February 7, 2024, the Court granted Eures' motion and denied the then-pending motions to dismiss as moot (Filing No. 27). On March 11, 2024, the First Amended Complaint was filed, which added Theresa Fritz, William Norris, Vickie Bohne, David Bowling, Rick Altmeyer, and Rebecca Clark as plaintiffs (Filing No. 33). On April 1, 2024, EMC filed a motion to dismiss the First Amended Complaint (Filing No. 41). Then, on April 10, 2024, the seven plaintiffs, including Eures, moved to add additional plaintiffs (Filing No. 48). Pines LLC brought counterclaims and Eures moved to dismiss those counterclaims (Filing No. 44; Filing No. 67). However, the Court granted the motion to add additional plaintiffs and denied as moot all motions to dismiss that were pending at that time (Filing

No. 70). Plaintiffs then filed their Second Amended Complaint on June 3, 2024 (Filing No. 71). No counterclaims were raised to the Second Amended Complaint. Both Pines LLC and EMC seek dismissal of the Second Amended Complaint (Filing No. 77, Filing No. 81).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    <u>DISCUSSION</u>

Because the Court is sitting in diversity, Indiana law applies to all substantive issues in this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (holding a federal court sitting in diversity must apply the substantive law of the state in which it sits). Further, neither party contests that the law of Indiana should apply.

The Second Amended Complaint alleges four claims against Pines LLC for Count I: Breach of Contract; Count II: Violations of Indiana Code § 32-31-8-5; Count III: Negligence; and Count IV: Fraud (*See* Filing No. 71). The Second Amended Complaint does not assert any claims against EMC. *Id.* In their Response to EMC's Motion to Dismiss, Plaintiffs argue that they meant to assert Count IV: Fraud against EMC as well (Filing No. 86 at 2). EMC and Pines LLC each seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (*See* Filing No. 78). The Court will first discuss Pines LLC's motion to dismiss all four claims alleged against it, before turning to the fraud claim against EMC.

### A.    <u>Count I: Breach of Contract</u>

For a plaintiff to succeed on a breach of contract claim under Indiana law, she must establish (i) the existence of a contract; (ii) the defendant's breach thereof; and (iii) damages. *Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1128–29 (Ind. Ct. App. 2011), *transfer denied*.

Plaintiffs allege Pines LLC is "in breach of the terms of the [Plaintiffs'] leases, which were year-to-year leases following the expiration of the lease periods." (Filing No. 71 at 15-16). Specifically, Plaintiffs allege Pines LLC violated the lease agreements in the following six ways:

a.    Increasing base rents in violation of existing leases;

b. Changing lease terms (including rents and fees) without signed agreements from class representatives, which changes are unenforceable under Indiana's statute of frauds;

c. To the extent lease terms permitted pass throughs of costs, increasing rents or imposing fees that were not based on actual cost increases;

d. Adding fees for utility services while also billing based on actual consumption, in violation of the lease terms and in excess of the amounts permitted by I.C. § 8-1-2-1.2;

e. Failing to maintain adequate drainage and sewage facilities in common areas and on property under the exclusive control of Defendants such that damages were caused to the class members' property – both from runoff during rains and from the backing up of sewage; and

f. Prohibiting class members from making repairs or changes to the ground, utilities (such as sewer lines), foundations, and other parts of their rental units while simultaneously refusing to make necessary repairs.

*Id.* at 16. Pines LLC categorizes these six alleged violations into three categories: (1) increasing the base rents, amendment of the lease terms, and passing on cost increases; (2) fees for utility services; and (3) failure to maintain drainage and sewage facilities and to make repairs (*see* Filing No. 82 at 20-36). The Court finds such categorizations to be reasonable and will discuss each in turn.

**1.  Increasing Base Rents, Amendment of Lease Terms, and Passing on Cost Increases**

Pines LLC contends that Plaintiffs' first three sub-parts of their breach of contract claim rely on the mistaken belief that changes of the lease agreements had to be in writing and signed, rather than modified through conduct. *Id.* at 21. Pines LLC argues that because the leases were for less than three years, Indiana's statute of frauds, Ind. Code §§ 32-21-1-1–17,[2] does not apply. *Id.* Pines LLC first points out that the Indiana legislature has extended the statute of frauds to

---

[2] In general, the Indiana statute of frauds, Ind. Code § 32-21-1-1(b), requires contracts that are "not to be performed within one (1) year" from the making of the agreement to be "in writing [and] signed by the person against whom the other party seeks to enforce the purported agreement. *See Logan v. Evans*, 230 N.E.3d 371, 380 (Ind. Ct. App. 2024).

numerous categories of contractual agreements, and the first sentence of Indiana's statute of frauds specifically states that the statute "does not apply to a lease for a term of not more than three (3) years." Ind. Code § 32-21-1-1(a). ([Filing No. 82 at 21](#)). And because the statute of frauds does not apply, Pines LLC argues the parties could modify the leases after the expiration of the initial lease term through their conduct. Pines LLC relies on *International Creative Management, Inc. v. D & R Entertainmet Co.*, arguing that "[w]here both parties act as if they had agreed to the changed term, this conduct amounts to an indisputable mutual departure from the written agreement." 670 N.E.2d 1305, 1313 (Ind. Ct. App. 1996).

Pines LLC next asserts that *Wang v. Sun*, 212 N.E.3d 1252 (Ind. Ct. App. 2023), instructs the Court's analysis. In *Wang*, a tenant paid the security deposit and first month's rent for a house. *Id.* at 1253. When a dispute arose over the condition of the home, the tenant moved out and stopped paying rent. *Id.* at 1254. Litigation ensued, and the tenant argued that the eleven-month lease was unenforceable because the tenant did not sign it. *Id.* at 1254–56. The Indiana Court of Appeals rejected this argument explaining that the tenant "acted according to the terms of the written lease. She paid the $1,300 security deposit, took possession of the house on September 1, paid September's rent, and eventually moved in. Because [the tenant] accepted the written lease, it is enforceable even though she didn't sign it." *Id.* at 1256.

Pines LLC also points the Court to *Norris Avenue Professional Building Partnership v. Coordinated Health, LLC*, 28 N.E.3d 296 (Ind. Ct. App. 2015). In *Norris*, the Indiana Court of Appeals held that a landlord had a right to rely on its tenant's actions in paying increased rent in accordance with the terms of a lease option, as the tenant's "affirmative conduct . . . in making increased rent payments demonstrated its intent to be held to the option terms." *Id.* at 303. The court in *Norris* rejected the argument that the tenant was a holdover because by paying the

8

increased rent, the tenant had acted in a manner inconsistent with that of a holdover. *Id.* The court continued by stating the tenant could "not now, well after the fact, claim to be a holdover during the same time in which it deprived [the landlord] of the opportunity to treat it like a holdover." *Id.*

Lastly, Pines LLC argues the Plaintiffs may not accept the benefits of keeping their homes on their leased lots, but now, years later, seek to repudiate their payment obligations all while basing their claims on the leases (Filing No. 82 at 25). Pines LLC cites *Anderson v. Indianapolis Indiana AAMCO Dealers Advertising Pool*, where the Indiana Court of Appeals held that "where a party receives the benefit of a contract for a period of time, he cannot later disavow its validity." 678 N.E.2d 832, 836 (Ind. Ct. App. 1997).

In response to the statute of frauds argument, Plaintiffs argue that Eures' initial lease term was from February 1, 2005, to February 1, 2008, and therefore, there is ambiguity as to whether the lease term was for three years or three years and one day (Filing No. 89 at 4). Plaintiffs also argue that because no other lease has been provided to the Court, the Court cannot determine whether the statute of frauds applies to some, all, or none of the other leases. *Id.* In response to the argument that the parties mutually assented to the increased rent by paying the rent and Pines LLC continuing to allow the Plaintiffs to keep their homes on the lots, Plaintiffs assert that because there are no depositions, discovery responses, or other evidence in the record, the Court cannot determine how the Plaintiffs reacted to the rent increases. *Id.* at 5. Plaintiffs further, without citing to any legal authority, assert that the fact that Plaintiffs paid the rent is insufficient to show they agreed to a modification through their conduct. Lastly, Plaintiffs quote *SWL, LLC v. NextGear Capital, Inc.*, arguing that "[a]s a general rule, questions regarding the modification of a contract are ones of fact." 131 N.E.3d 746, 753 (Ind. Ct. App. 2019) (quotation marks and citation omitted).

The Court agrees with Pines LLC and finds Plaintiffs' arguments lacking. Plaintiffs are correct that Indiana's statute of frauds states that a person may not bring an action involving any agreement that is not to be performed within one year from the making of the agreement unless the agreement is in writing and signed by the party against whom the action is brought. Ind. Code § 32-21-1-1(b). However, the statute explicitly states that it "does not apply to a lease for a term of not more than three (3) years." Ind. Code § 32-21-1-1(a). While Plaintiffs argue that Eures' lease agreement could have been for three years and one day, their own assertions in their Second Amended Complaint contradict this argument. By Plaintiffs own admission, "all [Plaintiffs] have leases of one (1) to three (3) years with substantially similar terms and conditions." (Filing No. 71 at 8).

Plaintiffs also argue that no other leases are currently in the record and thus, there is insufficient evidence for the Court to determine whether the statute of frauds applies to some, all, or none of the leases at issue. However, as discussed above, that is not the standard. On a motion to dismiss, the Court determines whether Plaintiffs have alleged facts sufficient to support a claim for relief. Here, Plaintiffs clearly allege that all lease agreements were for an initial term of three years or less. Plaintiffs also assert that the leases "were year-to-year leases following the expiration of the lease periods." *Id.* at 15–16 ¶ 101. Plaintiffs' attempt to create ambiguity with their response brief does not change this. *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) ("[W]hile [courts] must draw *reasonable* inferences in the [Plaintiffs'] favor, [they] should not draw inferences that while theoretically plausible are inconsistent with the pleadings." (emphasis in original)). Thus, pursuant to Plaintiffs' allegations that all of Plaintiffs' leases were between one to three years, the statute of frauds does not apply.

Second, because the statute of frauds does not apply, by the actions alleged in the Second Amended Complaint, the parties clearly modified the contract. "'[T]he modification of a contract, because it is also a contract, requires all of the requisite elements of a contract.'" *AM Gen. LLC v. Armour*, 46 N.E.3d 436, 443 (Ind. 2015) (quoting *City of Indianapolis v. Twin Lakes Enters., Inc.*, 568 N.E.2d 1073, 1085 (Ind. Ct. App. 1991)). However, "a party may not accept benefits under a transaction or instrument and at the same time repudiate its obligations." *In re Estate of Palamara*, 513 N.E.2d 1223, 1228 (Ind. Ct. App. 1987). By Plaintiffs' own admission, the leases were "year-to-year leases following the expiration of the lease periods[,] . . . which were enforceable against [Pines LLC]." (Filing No. 71 at 16).

The court also finds the cases cited by Pines LLC to be instructive, and Plaintiffs have provided no authority or argument to show the cited cases should not apply. Like *Norris*, Plaintiffs paid the increased rent and fees and retained the benefit of keeping their homes on the leased lots. While the Court does not have the exact dates of the other leases, Eures paid the increased rent for a year and seven months before filing suit. Moreover, the Indiana Court of Appeals held in *Anderson* that "where a party receives the benefit of a contract for a period of time, he cannot later disavow its validity." 678 N.E.2d at 836. To be clear, Plaintiffs did not have to accept the increased rent. They could have moved or attempted to negotiate a lower rent. But they may not now, having paid the increased rent and accepted the benefits of doing so, argue that the rent increase was invalid. Therefore, the parties modified the leases through their conduct, and Plaintiffs have failed to allege a breach of contract claim based on the increased rent.

### 2.  Fees for Utility Services

Pines LLC argues the Plaintiffs have failed to identify any term in the lease that delineates specific fees for utility services, so it could not have violated a term that does not exist (Filing No.

82 at 26). Pines LLC relies on *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 848 (S.D. Ind. 2005), where Judge Young dismissed a breach of contract claim because the plaintiff did "not indicate which of the specific terms of the contract [the defendant] is accused of breaching." *Id.* Pines LLC argues that for the same reasons the Plaintiffs acquiesced to the rent increases, they acquiesced to the utility fees (Filing No. 82 at 27).

In a footnote, Plaintiffs assert that the lease is not silent on utility fees because a pass-through provision states that the "Owner/Manager shall have the right to pass through [to] the residents without notice, the same rate increase received by Owner/Manager all unforeseen or unpredictable increases in expenses directly related to the operation of the community which expenses shall include but not be limited to: water, sewage, electric, waste removal." (Filing No. 89 at 3 n.1 (alteration in original)). Plaintiffs surmise that this provision "only allows the landlord to pass through utility expenses actually incurred on a dollar-for-dollar basis." *Id.* The Court is not persuaded.

The granting of a right in a contract does not automatically restrict that party from only proceeding via such right. Further, the provision which Plaintiffs reference does not mention "dollar-for-dollar." (Filing No. 33-1 at 1). The lease does not require only a pass-through cost of utilities on a dollar-for-dollar basis as Plaintiffs assert. Rather, the lease grants Pines LLC the ability to pass-through unforeseen or unpredictable increases in utility costs to the residents without notice. This provision is set up to protect the landlord in the event of an unexpected spike in utility costs. However, this provision does not limit any ability to increase utility costs.

As explained earlier in this Entry, the because the Plaintiffs acquiesced to the utility fees, they cannot now repudiate them. No provision in the lease prevents the landlord from increasing utility costs via lease addendum. Plaintiffs acquiesced to the utility fee increases by paying the

increases and retaining the benefit of such payments and have failed to allege circumstances establishing a breach of contract claim. Plaintiffs also state that they are not asserting a claim under Indiana Code § 8-1-2-1.2. Thus, the Court need not address Pines LLC's arguments concerning that code section.

### 3.  Failure to Maintain Drainage and Sewage Facilities and to Make Repairs

Next, Pines LLC argues persuasively that the Plaintiffs' breach of contract claim for failure to maintain drainage and sewage facilities, as well as to make repairs (Filing No. 82 at 33), should be dismissed because the lease contradicts Plaintiffs' assertions placing the duty of maintenance and repair on the lessees. *Id.* at 34. Pines LLC also argues that "just as with their allegations relating to utility fees, they have identified no specific contractual provision they believe [Pines LLC] breached as to maintenance of drainage and sewage facilities as well as to make repairs." *Id.*

Plaintiffs fail to respond to either of these arguments in their response brief. Such a failure constitutes a waiver. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); *Boogard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018) ("[A] district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) ("[B]y failing to respond responsively to the motion to dismiss . . . [the plaintiff] forfeited her right to continue litigating her claim"). Because Plaintiffs' have forfeited this claim, they have failed to state a claim for breach of contract on this issue.

But even if not forfeited, this claim fails because nowhere does the lease impose any obligations upon the lessor relative to maintaining drainage and sewage lines, nor to make the repairs Plaintiffs demand in the Second Amended Complaint (*see* Filing No. 33-1, Filing No. 82-1). "Courts have consistently granted motions to dismiss where the complaint fails to identify a

contractual duty or how that duty was breached." *See Norris v. Allstate Ins. Co.*, No. 22-CV-784, 2023 U.S. Dist. LEXIS 46245, at *3 (N.D. Ind. Mar. 17, 2023).

Accordingly, Plaintiffs have failed to state a claim for breach of contract, and this claim is **dismissed**.

**B.**    **Count II: Violations of the Indiana Code**

Plaintiffs allege that Pines LLC "breached their duties under Indiana's Landlord Tenant Statute, I.C. § 32-3[1]-8-5(2), (3), and (4)."[3] (Filing No. 71 at 17 ¶ 109). Indiana Code § 32-31-8-5 states that a landlord shall do the following:

(1) Deliver the rental premises to a tenant in compliance with the rental agreement, and in a safe, clean, and habitable condition.

(2) Comply with all health and housing codes applicable to the rental premises.

(3) Make all reasonable efforts to keep common areas of a rental premises in a clean and proper condition.

(4) Provide and maintain the following items in a rental premises in good and safe working condition, if provided on the premises at the time the rental agreement is entered into:

    (A) Electrical systems.

    (B) Plumbing systems sufficient to accommodate a reasonable supply of hot and cold running water at all times.

    (C) Sanitary systems.

    (D) Heating, ventilating, and air conditioning systems. A heating system must be sufficient to adequately supply heat at all times.

    (E) Elevators, if provided.

    (F) Appliances supplied as an inducement to the rental agreement.

---

[3] Plaintiffs' Second Amended Complaint alleges a violation of Indiana Code § 32-<u>32</u>-8-5, which does not exist. The parties' briefing makes clear that Plaintiffs meant to allege a violation of Indiana Code § 32-<u>31</u>-8-5.

Ind. Code § 32-31-8-5. Pines LLC points out that Section §32-31-8-1(a) states that Chapter 8 "applies only to dwelling units that are let for rent under a rental agreement entered into after June 30, 2002." *Id.*; (Filing No. 83 at 37). Eures executed a three-year lease on January 24, 2005, commencing on February 1, 2005, but Pines LLC challenges whether this case involves "dwelling units."

While "dwelling unit" is not defined in the statute, the Indiana Supreme Court, in *Rainbow Realty Group, Inc. v. Carter*, analyzed this precise issue, holding that "a Chapter 8 'dwelling unit' [refers] to a place to live, whether the structure is freestanding or an individual room, apartment, or other unit within a larger structure consisting of multiple units." 131 N.E.3d 168, 174–175 (Ind. 2019). Pines LLC contends that Plaintiffs lease a plot of land, and not the mobile homes, and a plot of land is not a "structure" as referred to by the Indiana Supreme Court.

Plaintiffs counter by arguing that "Defendants focus on the use of the word 'dwelling units' – a term defined nowhere in the statute – and assume . . . that a 'dwelling unit' must include a structure and . . . [that] the structure must be owned by the landlord (not the tenant)." (Filing No. 89 at 7). Plaintiffs also argue that they are renting "structures" because they are renting the pedestal foundations atop which their homes sit. *Id.* The Court is not persuaded.

The Indiana Supreme Court has interpreted this section stating that a "Chapter 8 'dwelling unit' [refers] to a place to live, whether the structure is freestanding or an individual room, apartment, or other unit within a larger structure consisting of multiple units." *Rainbow Realty*, 131 N.E.3d at 174–75. Here, a plot of land does not fall within the term "dwelling unit" as the Indiana Supreme Court has interpreted it because it is not a structure within which one can live. While the mobile homes themselves could be considered dwelling units, Plaintiffs are not renting

their mobile homes from Pines LLC. Rather, they are merely renting the land on which their mobile homes sit.

Plaintiffs argue that Pines LLC assumes a dwelling unit must include a structure but that the statute does not define what a dwelling unit is. However, this is not an assumption by Pines LLC. Rather, as stated above, the Indiana Supreme Court in *Rainbow Realty* stated that a dwelling unit is a structure within which one can live. Plaintiffs do not propose another definition of what a dwelling unit is—just that it does not need to be a structure because it is not defined. This argument contradicts the holding in *Rainbow Realty*, and the Court declines to expand the Indiana Supreme Court's definition.

Plaintiffs further contend that Pines LLC wrongly assumes that the structure must be owned by the landlord instead of the tenant (Filing No. 89 at 7). This argument contradicts the plain language of the statute. Indiana Code § 32-31-8-1(a) states, "this chapter applies only to dwelling units *that are let for rent under a rental agreement*." *Id.* (emphasis added). A dwelling unit cannot be let for rent to the tenant if the tenant owns the dwelling unit.

Second, the Court concludes that the pedestals are not dwelling units within the meaning of Indiana Code § 32-31-8-1. While the Court does not disagree with Plaintiffs' assertion that the pedestals could be "structures" as that term is ordinarily defined, they are not structures within which one may live, so they are not "dwelling units" as defined by the Indiana Supreme Court in *Rainbow Realty.* The Court finds that Indiana Code § 32-31-8 does not apply to the facts of this case, so it need not address the remaining arguments concerning this claim. Plaintiffs' have failed to state a claim for violations of Indiana Code § 32-31-8-5(2), (3), and (4), and this claim is **dismissed**.

C.    **Count III: Negligence**

"To effectively assert a negligence claim, [Plaintiffs] must establish that: (1) [Pines LLC] had a duty to exercise reasonable care under the circumstances; (2) [Pines LLC] breached that duty; and (3) [Plaintiffs] incurred damages as a proximate result of [Pines LLC's] breach of that duty." *Bldg. Materials Mfg. Corp. v. T & B Structural Sys.*, 804 N.E.2d 277, 282 (Ind. Ct. App. 2004). "Absent a duty, there can be no breach and, therefore, no recovery for the plaintiff in a negligence cause of action." *Id.* Further, the existence of a legal duty owed by one party to another is generally a question of law. *P.T. Barnum's Nightclub v. Duhamell*, 766 N.E.2d 729, 737 (Ind. Ct. App. 2002), *transfer denied*.

Plaintiffs argue that pursuant to *Zubrenic v. Dunes Valley Mobile Home Park, Inc.*, 797 N.E.2d 802, 806 (Ind. Ct. App. 2003), Pines LLC had a duty to maintain property common areas and infrastructure that are under their exclusive control and that by failing to do so, Pines LLC breached their duty, causing runoff and erosion leading to damages to the pedestals under Plaintiffs' homes (Filing No. 71 at 11, 18).

Pines LLC argues the Plaintiffs have failed to establish that it owed them a duty and that Plaintiffs' citation to *Zubrenic* undermines their claim that a duty exists (Filing No. 82 at 52). Plaintiffs fail to respond to this argument and focus their response solely on Pines LLC's later arguments concerning the common enemy doctrine (Filing No. 89 at 12). The Court, however, will first determine whether *Zubrenic* conveys a common law duty onto Pines LLC—to maintain the drainage systems and prevent runoff—before addressing the parties' arguments concerning the common enemy doctrine. The Court finds that it does not convey such a duty.

Zubrenic, the plaintiff, fell while on the stairway she was using to exit a mobile home on a lot the tenant leased from the landlord. *Zubrenic*, 797 N.E.2d at 804. Zubrenic alleged negligence

on the part of the landowner for failing to make the stairway safe. *Id.* The court stated, "[g]enerally, the common law does not impose a duty upon a landlord to protect tenants from injuries due to defective conditions on the property once possession and control of the property has been surrendered." *Id.* at 806. However, *Zubrenic* provides three exceptions to this rule: (1) a tenant may recover for injuries stemming from defective premises if the landlord expressly agrees to repair the defect and is negligent in doing so; (2) the landlord may be held liable for injuries caused by latent defects of which the landlord was aware but which were unknown to the tenant and were not disclosed by the landlord; and (3) a landlord has a duty to maintain in safe condition the parts of the building used in common by the tenants and over which the landlord retains control. *Id.*

Here, as in *Zubrenic*, the Court finds that no exception to the general rule that landlords do not have a duty once the property is possessed and controlled by the tenant applies to this case. *Id.* First, there is no allegation in the pleadings that Pines LLC expressly agreed to repair the drainage for the lots. The rules and regulations incorporated into the agreements specifically state that "[s]et-up of manufactured home shall be the responsibility of the tenant" and places the responsibility of any repair or replacement of water line leaks on the tenant (Filing No. 82-1 at 1). Second, Plaintiffs make no assertion that Pines LLC knew of any latent defects in the drainage and failed to disclose such latent defects. Finally, the third exception does not apply because the resulting harm Plaintiffs claim—the structural damage to the pedestals under their homes—are not part of a common area. Moreover, a review of the history of this exception indicates that it aims at protecting tenants from personal injury due to unsafe conditions in a common area. *See Hodge v. Nor-Cen, Inc.*, 527 N.E.2d 1157 (Ind. Ct. App. 1988); *see also Slusher v. State*, 437 N.E.2d 97 (Ind. Ct. App. 1982). No such personal injuries in a common area occured in this case.

Because the Court finds that *Zubrenic* does not confer a duty to maintain the drainage of the lots onto Pines LLC and Plaintiffs provide no other way in which a duty might arise besides merely citing *Zubrenic*, the Court concludes that no duty arises from Plaintiffs' allegations, the absence of which causes Plaintiffs' negligence claim to fail. *Bldg. Materials*, 804 N.E.2d at 282. Therefore, Plaintiffs fail to state a claim of negligence, and this claim is **dismissed**.

**D.     Count IV: Fraud Claim Against Pines LLC**

To succeed on a fraud claim, a plaintiff must establish (1) a material misrepresentation of past or existing facts by the party to be charged that (2) was false, (3) was made with knowledge or reckless ignorance of the falseness, (4) was relied upon by the complaining party, and (5) proximately caused the complaining party's injury. *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996). A party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The complaint must state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (quoting *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992) (internal quotation marks and citation omitted)). The particularity requirement "forces the plaintiff to conduct a careful pretrial investigation" and minimizes the risk of extortion that may come from a baseless fraud claim. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (quoting *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748–49 (7th Cir. 2005)).

In their Second Amended Complaint, Plaintiffs allege that "[Pines LLC] or [its] Counsel have, knowingly and intentionally, falsely represented that their purported 'experts' concluded

there was no evidence of erosion and that the supports under Plaintiff's [*sic*] home had not shifted." ([Filing No. 71 at 18](#) ¶ 119). Plaintiffs allege they know this because the photographic evidence shows clear erosion which "is not a matter of opinion." *Id.* at 18 ¶ 118.

Pines LLC argues the Plaintiffs have failed to plead fraud with the requisite particularity ([Filing No. 82 at 62](#)). They argue that none of the Plaintiffs, besides Eures, even attempts to allege the elements of fraud; and Eures fails to do so with particularity. Pines LLC further argues that other than Eures', the Plaintiffs do not allege that an expert examined any of their homes. *Id.* at 63. Pines LLC argues mere expressions of opinion cannot be the basis for an action in fraud. *Id.* at 63–64.

In response, Plaintiffs claim that Pines LLC sent experts to investigate whether erosion occurred and that those investigators told Pines LLC there was erosion, but then Pines LLC lied to Plaintiffs' counsel by saying that the experts found no erosion ([Filing No. 89 at 13](#)). Plaintiffs surmise that this constitutes fraud. The Court disagrees.

First, none of the Plaintiffs besides Eures has attempted to allege fraud. Plaintiffs allege by way of example that the "[p]hotographs taken under Plaintiff's [*sic*] home show clear evidence of erosion, visible and obvious to even a lay person," and the "photograph of the erosion under Eures' home was taken contemporaneously with these 'experts' inspection and clearly shows, as a matter of fact and not opinion, signs of erosion under [Eures'] home." ([Filing No. 71 at 13](#) ¶¶ 93–94). Plaintiffs argue this photograph, *id.* at 14, supports their allegation that Pines LLC lied. However, Plaintiffs fail to plead the time, place, and method of the alleged lies for all Plaintiffs' claims, including Eures' claim.

Moreover, "[a] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient" to satisfy the particularity requirement of

Rule 9(b). *Noble Roman's, Inc. v. Puzzles Fun Dome, Inc.*, No. 14-cv-1026, 2015 U.S. Dist. LEXIS 32265, at *11 (S.D. Ind. Mar. 16, 2015) (quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)). Plaintiffs attempt precisely this and have provided the Court with no reason why it should depart from this general rule. Plaintiffs essentially argue that because the single photograph of Eures' home shows erosion, someone had to have lied. Such allegations run afoul of the particularity requirement. "The requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible." *Grenadyor*, 772 F.3d at 1106.

Second, even if the Plaintiffs had satisfied the particularity requirement, they fail to allege circumstances satisfying the remaining elements of a fraud claim. Indiana courts have held that "'[m]ere expressions of opinion cannot be the basis for an action in fraud; an action in fraud requires misrepresentation of material fact.'" *BSA Construction LLC v. Johnson*, 54 N.E.3d 1026, 1031 (Ind. Ct. App. 2016) (alteration in original) (quoting *Block v. Lake Mortg. Co.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1992)). Alleged misrepresentations or omissions regarding "appropriateness," "value," or "main benefits" are matters of opinion or legal conclusion, not fact, because they involve a matter of judgment and estimation about which reasonable people can differ. *Am. United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 703 (Ind. Ct. App. 2004). Here, Plaintiffs provide a photograph of below Eures' home alleging that it is not a matter of opinion but a matter of fact that erosion occurred and therefore, Pines LLC lied. Simply asserting an opinion as if it is fact is not sufficient, because whether erosion occurred requires judgment and estimation. Accordingly, Plaintiffs' have failed both to allege fraud in compliance with Rule 9(b) and have failed to allege facts sufficient to satisfy the elements of a fraud claim against Pines LLC.

**E.**     **Count IV: Fraud Claim Against EMC**

EMC argues that Plaintiffs are attempting to impose an insurance coverage obligation on EMC before a liability determination has been made on the part of the insureds—Pines LLC. (Filing No. 88 at 2). EMC contends any claims that Plaintiffs allege against it are "clearly derivative of a breach of contract and bad faith claim, and thus constitute an improper direct action against EMC." *Id.* As such, EMC argues any claims against it should be dismissed.

In addition, as mentioned earlier, Plaintiffs' fail to name EMC as a party against which they are alleging fraud. Rather, the Second Amended Complaint alleges fraud against Pines LLC only (*see* Filing No. 71 at 18). Plaintiffs argue that the failure to identify which claims were being asserted against EMC was inadvertent and in their response, they clarified that they are alleging fraud against EMC (Filing No. 86 at 2). However, "a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire*, 631 F.3d at 448. Failing to name EMC in their fraud claim is also inconsistent with the particularity requirement because the Second Amended Complaint provides for no causes of action against EMC other than merely naming it as a defendant in this case.

However, even if the Second Amended Complaint had named EMC, their fraud claim against EMC would be based on the same set of facts alleged against Pines LLC and subject to dismissal (*see* Filing No. 71 at 18). Moreover, EMC is correct that Indiana courts have held that "a tort action on a contract theory by an injured third party directly against the liability carrier is inappropriate." *Cromer v. Sefton*, 471 N.E.2d 700, 703 (Ind. Ct. App. 1984) (citing *Martin v. Levinson*, 409 N.E.2d 1239 (Ind. Ct. App. 1980).

Accordingly, because Plaintiffs fail to plead a fraud claim against EMC with particularity, and any claim at this stage is an improper direct action against EMC, any claim of fraud against EMC is **dismissed**.

## F.    Dismissal with Prejudice

Finally, the Court must determine whether dismissal should be with or without prejudice. Plaintiffs have not requested leave to amend in the event of dismissal. Both Pines LLC and EMC ask the Court to dismiss all claims against them with prejudice (Filing No. 82 at 65; Filing No. 78 at 28). The Court "should freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Generally, 'a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.'" *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 347 (7th Cir. 2018) (quoting *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015)). However, the Court need not grant leave to amend if "'it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted.'" *Id.* at 347 (quoting *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). "An amendment is futile if it "'fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" *Crestview Vill. Apts. v. U.S. Dep't of Housing & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004) (quoting *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991)).

In support of their request for dismissal with prejudice, Defendants point out that the deadline to amend pleadings expired on April 10, 2024, and this matter is set for final pretrial conference on July 9, 2025, and trial is set on August 4, 2025. Defendants explain that the parties have engaged in discovery on Plaintiffs' claims, and an amendment of the pleadings to assert new

claims or theories at this late juncture would severely prejudice Defendants. Given this posture, Defendants contend dismissal should be with prejudice.

The Court agrees. Plaintiffs have had multiple opportunities to amend their Complaint and cure any deficiencies in their pleadings but have failed to do so. Plaintiffs also had the benefit of Defendants two prior motions to dismiss—including briefing—to consider when drafting the Second Amended Complaint (*see* Filing No. 12; Filing No. 18; Filing No. 41; Filing No. 67). Based on its analysis of the claims raised in the Second Amended Complaint, the Court believes that further opportunities to amend would be futile. Accordingly, dismissal is with prejudice.

## IV.    CONCLUSION

For the above reasons Defendants Havenpark Management, LLC and The Pines of New Albany, LLC's Motion to Dismiss (Filing No. 81) and Defendant EMC Property and Casualty Company's Motion to Dismiss (Filing No. 77) are **GRANTED**. The claims of Plaintiffs Rebecca Eures, Theresa Fritz, Charles Fritz, Jr., William Norris, Vickie Bohne, David Bowling, Rick Altmeyer, Rebecca Clark, Harry J. Decker, June B. Decker, Linda L. Corbett, Michael Ross, Ava Ross, Linda Jackson, Rhonda Haller, Betty Nolot, Kimberly Obremski, Jeff Seewer, Patty Jo Jaynes, Janice Walthall, Dennis Corolla, George Ross, Carolyn Ross, Frank Inman, Phillip Smithpeter, Robert Madden, Marcia Madden, Betty Harper, Deedra Ankrom, and Don Sites claims are **dismissed with prejudice**. The claims of Plaintiff Jennifer Reilly were resolved by settlement (Filing No. 107), however the stipulation of dismissal of her claims has not been filed. Upon receipt of Reilly's stipulation, all claims in this case will be resolved, and final judgment will issue in a separate Order.[4]

---

[4] A Notice of Suggestion of death was filed stating that Plaintiffs Janice Walthall and Dennis Corrola sadly passed away on or about July 19, 2024. (Filing No. 98). No notice of substitution was filed in accordance with Rule 25(a), and therefore, the action by or against these Plaintiffs must be dismissed. (Filing No. 99).

Final judgment will issue in a separate Order, as soon as the stipulation of settlement for Reilly has been filed.

**SO ORDERED.**

Date:   3/31/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

J. David Agnew
LORCH NAVILLE WARD LLC
dagnew@lnwlegal.com

Aj Bokeno
Wilson Elser
aj.bokeno@wilsonelser.com

John H. Dwyer, Jr.
john.dwyerjr@wilsonelser.com

Edward M. O'Brien
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
edward.obrien@wilsonelser.com

Meghan Eileen Ruesch
LEWIS WAGNER, LLP
mruesch@lewiswagner.com

Christopher Chase Wilson
Lewis Wagner, LLP
cwilson@lewiswagner.com