IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| REBECCA EURES, et al. | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| vs. | ) CASE NO. 4:23-CV-00184-TWP-KMB |
| | ) |
| HAVENPARK MANAGEMENT, LLC, et al. | ) |
| | ) |
| Defendants | ) |

**BRIEF IN SUPPORT OF MOTION
TO AMEND JUDGMENT AND TO REMAND**

Come now the Plaintiffs, by counsel, and move this Court to either amend or vacate its "Final Judgment Pursuant to Fed. R. Civ. P. 58" ("Judgment") [Filing No. 112] pursuant to Fed. Rule of Civ. Proc. 59(e) (or, in the alternative, FRCP 60(b)(4)) and that that any remaining claims be remanded pursuant to 28 USC 1447(c) to the state court in which it originated because this Court lacks subject matter jurisdiction.

Specifically, no individual Plaintiff had damages in excess of $75,000 at the time Defendants removed this case to federal court – as can be shown by pre-suit correspondence between counsel. Nor did the aggregate claims of all class members exceed $5 million, which would permit removal under the Class Action Fairness Act ("CAFA").[1] Therefore, this Court did not have subject matter jurisdiction over this case at the time of removal.

---

[1] In the event the Judgment is vacated and this case is remanded to state Court, Plaintiffs will move for voluntary dismissal Counts II and IV, having been persuaded these claims fail as a matter of law and cannot be cured through amendment.

In the alternative, Plaintiffs request this Court reconsider its dismissal "with prejudice" of Counts I (breach of lease) and/or III (negligence).

In support, Plaintiffs state as follows:

## I.  INTRODUCTION

In the original Complaint Rebecca Eures was the only Plaintiff; she sought individual damages for negligence and fraud, and sought to represent a class on unrelated claims of breach of lease. [Filing No. 1-2] At the time of removal, Plaintiff's attorney had only claimed in correspondence to opposing counsel that Ms. Eures' compensatory damage for negligence were approximately $50,000.[2] [Filing No. 1-2 (Complaint, Individual Cout I: Breach of Contract and Individual Count II: Negligence).] (<u>Exhibit A</u>.) For Class Count I ("Breach of Contract (Lease)"), Ms. Eures also claimed all homeowners had been overcharged rent. While neither she nor her counsel specified an amount for these damages, the alleged overcharges were roughly $7,030 at the time. This totals $57,030 in damages for Rebecca Eures, individually – an insufficient amount to establish diversity jurisdiction.

In removing this case to federal court, Defense Counsel cited a portion of an email thread in which Plaintiff's counsel made a "demand" for $225,000 as evidence that the value of the case exceeded the $75,000 jurisdictional threshold. However, as prior emails would have shown, this was actually an **offer by Ms. Eures to sell her house to The Pines** – as an alternative resolution to the dispute – not a claim for damages. This "demand" also included an amount to compensate

---

[2] "The amount in controversy is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins." *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001)

Ms. Eures for the depreciated value of her home, plus consideration for confidentiality, non-disparagement, and the unavailability of Ms. Eures to act as class counsel.

Obviously, an offer to sell Defendants her house cannot be used to establish damages meeting the jurisdictional threshold. This is because, in her Complaint, Ms. Eures was not seeking to compel Defendants to buy her house. The purchase price of her home simply was not an element of damages being sought in this case.

Even if Defendants interpreted Ms. Eures' other promises as reducing the risk of a class action, this cannot be used to satisfy the jurisdictional threshold because claims of multiple plaintiffs cannot be aggregated to meet the jurisdictional minimum. *Clark ex rel. A.C. v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007) ("It is well settled that while an individual plaintiff's multiple claims against a single defendant may be aggregated to determine diversity jurisdiction, the separate claims of multiple plaintiffs against a single defendant cannot be aggregated to meet the jurisdictional requirement.").

Under decisions of the Seventh Circuit Court of Appeals, this Court must begin its analysis form the presumption that it lacked jurisdiction; and the party seeking removal bears burden of proving that damages exceeding the jurisdictional minimum were truly at issue. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."). Here, the evidence shows Ms. Eures' legally sustainable claims totaled only $57,030 at most, and this Court therefore did not have subject matter jurisdiction at the time of removal. The Judgment must therefore be vacated and the case remanded to the state court where it originated.

.

## II. STATEMENT OF THE CASE

This case originated on October 12, 2023, as a putative class action with Rebecca Eures as the class representative. Specifically, the Complaint was filed in the Superior Court No. 3 for Floyd County, Indiana, as Cause No. 22D03-2310-PL-1419 [Filing No. 1-2].

Defendants Havenpark Management, LLC and The Pines of New Albany, LLC removed this case to the US District Court for the Southern District of Indiana based on diversity jurisdiction. [Filing No. 1] To establish the jurisdictional threshold amount in controversy of $75,000, Defendants relied on a portion of a series of emails between Plaintiff's Counsel and Defense Counsel regarding settlement. [Filing No. 1-3.]

In this email, Plaintiff had demanded $225,000. However, the previous emails established this settlement proposal was **for the sale of her home – not a claim for damages she could recover in this lawsuit**. This demand also factored in confidentiality, non-disparagement, and future expenses that Defendants could avoid through settlement – i.e., Defendant's attorneys' fees potential and possibly Plaintiff's future attorneys' fees.

Frankly stated, the email demand contained a premium for Ms. Eures' willingness to move from the neighborhood and cease acting as the neighborhood gadfly. That is obviously not includable in calculating the amount in controversy.

## III. PRE-SUIT COMMUNICATIONS BETWEEN COUNSEL REGARDING DAMAGES AND SETTLEMENT (CITED BY DEFENDANTS AS BASIS FOR DIVERSITY)

Prior to filing suit and at the time the original Complaint was filed, the undersigned counsel only represented a single Plaintiff in this case individually: Rebecca Eures. [Filing No. 1-2.] In pre-suit correspondence between Plaintiff's Counsel and Defense Counsel, Plaintiff's

4

Counsel itemized Ms. Eures' damages at roughly $50,000. (Email from Plaintiff's Counsel, dated Oct. 9, 2023, attached as Exhibit A.) This included approximately $30,000 to level her mobile home and roughly $20,000 to repair damages caused by the shifting foundation, both based on contractor estimates. (Exhibits A, G and H.)

However, Ms. Eures also wanted to sell her home and leave the neighborhood. So, rather than have Defendants' insurance company pay Ms. Eures damages, Ms. Eures offered to sell her home to Havenpark/Pines. (Exhibits B and D) In removing this case to federal court, Havenpark/Pines cited an October 9, 2023, email in which Ms. Eures made a "demand" of $225,000. [Filing No. 103.] Defendants used this dollar figure to assert the value of Ms. Eures' claim was in excess of the $75,000 threshold for diversity jurisdiction.

However, this Court was not made aware that this $225,000 proposal was not simply a demand for damages. This proposal was an offer to sell Ms. Eures' home to Havenpark/Pines, plus pay her damages, plus avoid the risk of her cooperation in a multi-plaintiff lawsuit, plus avoid the risk of having to pay Plaintiff's future attorneys' fees.[3] This is shown by the emails leading up to the October 9, 2023 email:

- Ms. Eures estimated the value of her home to be $150,000 prior to any damages. (Email from Plaintiff's Counsel, dated January 24, 2023, attached as Exhibit B). Rather than demand the insurance company pay damages, Ms. Eures instead simply offered to sell Havenpark/Pines her home for $120,000. (Exhibit B.)

- In a telephone call, Havenpark/Pines rejected this proposal and offered a flat amount of $10,000 for damages. (Exhibit C.)

- On May 1, 2023, Ms. Eures' attorney proposed an insurance settlement of $45,000. As a condition, Eures wanted Havenpark/Pines to also buy her house for $70,000. (Email from Plaintiff's Counsel, dated May 1, 2023, attached as Exhibit

---

[3] Attorneys' fees and expenses anticipated to be incurred after filing suit are not includable for purposes of calculating jurisdictional minimum for diversity jurisdiction. *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001).

5

C.) This totaled $135,000 -- $45,000 from the insurance company and $70,000 from Havenpark/Pines to buy the house.[4] (Exhibit D)

- Havenpark/Pines again declined to purchase the home. Instead, they offered a "damages only" (no sale of the home) settlement of $15,000. (Exhibit E)

- In an email dated July 12, 2023, Plaintiff's Counsel rejected the $15,000 damages settlement, and revoked Ms. Eures' "demand of a combined $135,000" ($70,000 to purchase her home and $45,000 for damages). Instead, Plaintiff's Counsel implied that there were many other property owners in Ms. Eures' position, and that Havenpark/Pines could wind up with multiple claims against it, stating, "Your client has a big problem – more accurately, dozens of big problems." (Exhibit D.) To avoid future attorneys' fees and to avoid Ms. Eures' cooperation with other tenants' in pursuing their claims, Ms. Eures increased her demand to $250,000, which again would include the sale of her home to Havenpark/Pines. (Exhibit D ("Ms. Eures will transfer title and no further action will be taken.").)

- Havenpark/Pines then made a final $30,000 "damages only" offer. Plaintiff's Counsel then sent an email to Defense counsel with a reduced "settlement demand" of $225,000. (Exhibit F.) However, as shown by the context of the previous emails, this was an offer to (a) sell Ms. Eures' home to Havenpark/Pines, plus (b) settle the damages claim, plus (c) eliminate Ms. Eures' negative participation in other tenants' claims, plus (d) avoid having to pay Plaintiff's post-filing attorneys' fees.

This final, October 9, 2023 email is what Defense Counsel attached to its Notice of Removal to show Ms. Eures' claim was valued in excess of $75,000. [Filing No. 1-3; see also Exhibit F hereto.] Because this email was provided to this Court without context, this court had the incorrect impression that Rebecca Eures was alleging individual damages in excess of $75,000. She was not; in email communications, Plaintiff's counsel clearly only alleged individual damages of $50,000.

---

[4] Again, the value of Ms. Eures' home was not an element of damages being sought in this case. She was offering to sell her home to Havenpark/Pines as an alternative to Havenpark/Pines' insurer paying up to $50,000 in damages.

6

## IV. ARGUMENT

A. <u>Diversity Jurisdiction Requires Individual Damages of $75,000 or Class Damages of $5 million</u>.

The "concept of subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court." *United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 1785 (2002). So, if this Court did not have subject matter jurisdiction over this case, the Judgment entered on April 4, 2025 [Filing No. 112] is void and must be vacated.

Moreover, the Supreme Court has stated, "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). Here, the case was removed by Defendants, who bore the burden of proving jurisdiction.[5] In this case, Defendants predicated removal exclusively on "diversity" subject matter jurisdiction under 28 USC §1332. "To invoke the diversity jurisdiction of the federal courts, a party must establish both that diversity of citizenship is complete and that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 717 (7th Cir. 2012). So, Defendants bore the burden of proving both (a) diversity of citizenship and (b) that the amount in controversy exceeded $75,000.

For purposes of determining whether the amount in controversy exceeded $75,000, Defendants could not simply add up all the claims of all of the class members. "It is well settled that while an individual plaintiff's multiple claims against a single defendant may be aggregated

---

[5] In both of their Amended Complaints, Plaintiffs stated they took no position on whether this Court had subject matter jurisdiction. [Filing No. 33 and 71.]

7

to determine diversity jurisdiction, the separate claims of multiple plaintiffs against a single defendant cannot be aggregated to meet the jurisdictional requirement." *Clark ex rel. A.C. v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007). In other words, at least one Plaintiff's claims must have exceeded the $75,000 threshold, standing on its own.

Moreover, this amount must be calculated as of the date suit was filed. *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 273 (7th Cir. 2001) ("The amount in controversy is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins.")

In short, this Court lacked subject matter jurisdiction unless Defendants can demonstrate that Rebecca Eures' claim at the time her complaint was filed was worth $75,000 or more.[6] As shown below, her claim did not meet the jurisdictional threshold at the time suit was filed and the Judgment must be therefore be vacated.

B. <u>Rebecca Eures' Breach of Contract and Negligence Claims Did Not Meet the $75,000 Threshold, Nor Did the Class Claims Meet the $5 Million Threshold</u>.

At the time Plaintiff Rebecca Eures' Complaint was originally filed, her attorney estimated her property damages at roughly $50,000. (<u>Exhibit A</u>.) This was shown in email communications to opposing counsel and supported by estimates by contractors, Permajack and Hoard Construction (attached as <u>Exhibits G</u> and <u>H</u>.)

In addition, Ms. Eures, individually and on behalf of the proposed class, was seeking damages for overcharges for rent. While these damages were not quantified at the time, The

---

[6] Under the Class Action Fairness Act, a US District Court many nonetheless have diversity jurisdiction if the aggregate claims total $5 million. 28 USC 1332(d)(2). However, The Pines mobile home park only has about 200 units and the only cognizable class claim being alleged in the original complaint was for breach of lease. Because damages were less than $10,000 for each of the 200 potential class members, this case fell far short of the $5 million jurisdictional threshold for class actions.

Pines and Havenpark acquired The Pines mobile home park in July of 2020 and commenced charging rents on August 1, 2020. (Affidavit of Rick Altmeyer with attached Deed, attached as Exhibit I.) In the original Complaint, Rebecca Eures alleged Defendants overcharged for rent and other fees. While the amount of those charges was not quantified in the Complaint, Plaintiff Rick Altmeyer calculated these alleged overcharges to be approximately $185 per month for him and other members of the class.

The original complaint was filed in October of 2023 [Filing No. 1-2], 38 months after Defendants acquired The Pines neighborhood. Overcharges of $185 per month for 38 months total only $7,030. Even adding this amount to the $50,000 in damages Rebecca was seeking individually, the total amount alleged in the original Complaint for her claims would only be around $57,000 – well below the jurisdictional minimum for diversity jurisdiction.

The evidence clearly shows that Ms. Eures was not alleging compensatory damages sufficient to meet the jurisdictional threshold for diversity jurisdiction. Consequently, the only way this Court could achieve subject matter jurisdiction is to include Plaintiff's claims for punitive damages and future attorneys' fees. As explained below, these alleged damages could not be included in the jurisdictional amount because they were not legally possible.

    C. Claims Under the Deceptive Practices Act Were "Legally Impossible" and Did Not Count Toward Jurisdictional Minimum.

In addition to her class claim of breach of lease and her individual claim of property damage, Plaintiff Rebecca Eures also brought two other claims in her original Complaint. One of these was a class claim for violations of Indiana's Deceptive Practices Act. In that Complaint, Plaintiff requested treble damages under the act. [Filing No. 1-2.] While the compensatory damages claimed under this count was identical to the breach of lease claim, the Deceptive

9

Practices Act also provides for possible punitive damages and recovery of attorneys' fees. I.C. § 24-5-0.5-4

However, in their Brief in support of their first Motion to Dismiss [Filing No. 13] Defendants correctly noted, "Subsection 4(a) of the [Deceptive Practices] Act, which authorizes a person who relies on a deceptive act to sue for damages, 'does not apply to a consumer transaction in real property.' Ind. Code § 24-5-0.5-4(a)." See also, *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 178 (Ind. 2019).

Typically, the Plaintiff's allegations in the complaint control whether the jurisdictional minimum has been reached. However, the 7th Circuit Court of Appeals has noted that claims with no basis in law do not count towards the jurisdictional minimum. In *Sykes v. Cook Inc.*, 72 F.4th 195 (7th Cir. 2023), the Court stated:

> The plaintiff's allegations about the amount in controversy control unless the court concludes, "to a legal certainty," that "the face of the pleadings" demonstrates "that the plaintiff cannot recover" the jurisdictional minimum or that "the proofs" show that "the plaintiff never was entitled to recover that amount." *St. Paul Mercury*, 303 U.S. at 289. Put differently, the court has jurisdiction unless an award for the jurisdictional minimum would be legally impossible.

*Id*. at 205.

Here, Plaintiff recovering treble damages under Indiana's Deceptive Practices Act was a legal impossibility – the Act's right of action does not cover real estate transactions. Consequently, Plaintiff Rebecca Eures' alleged damages were no more than the $50,000 for property damage and $7,030 for alleged breach of contract. As such, Ms. Eures' individual claims did not meet the jurisdictional minimum of $75,000.[7]

---

[7] Nor did the class members' aggregate claims approach the jurisdictional, $5 million minimum for diversity jurisdiction over a class under 28 USC 1332(d)(2).

This Court had no subject matter jurisdiction. The Judgment should be set aside and the case remanded to the state court where it originated.

### D. Fraud Claim Was "Legally Impossible" and Did not Count Toward Jurisdictional Minimum.

In her original Complaint, Rebecca Eures made a fourth claim: an individual claim for fraud. As with the Deceptive Practices Act claim, a fraud claim carries with it the possibility of punitive damages.

However, this Court has ruled Rebecca Eures' fraud claim failed on its face. Specifically, this court ruled that Plaintiffs were attempting to base a fraud claim on a statement of opinion, quoting both *BSA Constr. LLC v. Johnson*, 54 N.E.3d 1026, 1031 (Ind. Ct. App. 2016) and *Block v. Lake Mortg. Co.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1992) for the following: "Mere expressions of opinion cannot be the basis for an action in fraud; an action in fraud requires misrepresentation of material fact."[8]

In short, this Court concluded it was legally impossible for Plaintiff Rebecca Eures to recover under a theory of fraud. Consequently, her claimed punitive damages were not includable in determining whether this case met the $75,000 jurisdictional threshold for subject matter jurisdiction.

---

[8] The Undersigned Counsel wishes to clarify that the fraud claim was brought against Havenpark, The Pines, and EMC Property and Casualty Company **only – no one else**. It was based on what appeared to be clear photographic evidence and the opinion of technicians of PermaJack of Louisville Waterproofing and Foundation Repair. (Exhibit G, "Existing support columns have shifted due to water intrusion, water must be controlled.") This claim was filed under the sincere, good faith belief, based on evidence, that either the Defendants or their experts were being disingenuous. However, the Undersigned Counsel is confident that Defense Counsel had no knowing role in any misrepresentation that might have occurred. Having litigated this case against Defense Counsel, the Undersigned has found Counsel for Havenpark/The Pines to be an advocate of the highest quality with unimpeachable integrity.

E.  Future Attorneys' Fees Are Not Includable In Determining Jurisdictional Minimum.

The only claim for which Plaintiff was seeking attorneys' fees in the original Complaint was the Deceptive Practices Act claim. As noted above, this claim did not count toward the jurisdictional minimum because it was apparent on the face of the Complaint that this claim could not survive. However, because Rebecca Eures' $225,000 offer to sell her house and release all claims also factored in avoidance of future attorneys' fees for both Plaintiff and Defendants, this issue is worth addressing separately.

While it is theoretically possible for a claim for attorneys' fees to be included in calculating the amount in controversy, attorneys' fees and expenses anticipated to be incurred *after* filing suit are not includable. *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001). As the Seventh Circuit has noted, "The amount in controversy is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins." *Id*. at 273. Consequently, attorneys' fees that would be incurred during litigation – i.e., after filing suit – and would be recoverable at the end of the case do not count towards the jurisdictional amount. *Id*. The $225,000 "demand" cited by Defense Counsel in support of jurisdiction included avoidance of future attorneys' fees as a component of the demand.

To reiterate: Plaintiff's pre-suit "demand" of $225,000 was not a calculation of her damages. Rather, it was an offer to sell the Defendants her house, coupled with an amount to pay for her damages and to avoid the costs of future attorneys' fees. Consequently, the $50,000 estimate of damages by Plaintiff's counsel in pre-suit communications controls. This Court did not have subject matter jurisdiction over this case.

  F. <u>Even If Diversity Jurisdiction Was Appropriate for Eures' Negligence Claim, There Was No Supplemental Jurisdiction Over the Later Added Defendants.</u>

Moreover, even if this Court finds it had subject matter jurisdiction over Ms. Eures' claims individually, that does not mean this Court had jurisdiction over the later added plaintiffs. This Court could not exercise supplemental jurisdiction over the individual plaintiffs added later unless their individual claims were valued at $75,000 or more.

Specifically, 28 USC 1367(b) states, "In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title [28 USCS § 1332], the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs . . . seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332[.]"

Here, 24 additional Plaintiffs moved on April 10, 2024, to intervene in this case. [Filing No. 48.] Pursuant to 28 USC 1367(b), this Court had no subject matter jurisdiction over any whose claims did not individually meet the $75,000 threshold. A very few had property damage claims similar to Rebecca Eures, but most simply were claiming overpayments on rent.

The following is a list of Plaintiffs who remained in the case as of the date the Judgment was entered, broken down by those with/without property damage claims caused by shifting foundations:

Plaintiffs with foundation issues:
1. Rebecca Eures, 201 Black Pine Blvd.
2. Deedra Ankrom, 4707 Scoth Pine Dr.
3. Vickie Bohne, 424 White Pine Blvd.
4. Robert and Marcia Madden, 500 White Pine Blvd.
5. Betty Harper, 508 White Pine Blvd.
6. Theresa and Charles Fritz, 4726 Scotch Pine Blvd.
7. William Norris, 4722 Scotch Pine Blvd.
8. Ava and Michael Ross, 418 White Pine Blvd.

Plaintiffs without foundation issues:
9. David Bowling, 425 White Pine Boulevard
10. Rick Altmeyer and Rebecca Clark, 420 White Pine Boulevard
11. Harry and June Decker, 329 White Pine Boulevard
12. Linda L. Corbett, 402 White Pine Boulevard
13. Ava and Michael Ross, Savannah and Tyler Ross, 418 White Pine Boulevard
14. Linda S. Jackson, 122 White Pine Boulevard
15. Rhonda K. Haller, 332 White Pine Boulevard
16. Betty Nolot, 202 Black Pine Boulevard
17. George and Carolyn Ross, 4714 Black Pine
18. Frank Inman, 510 White Pine Boulevard
19. Phillip Smithpeter, 204 Pine Cone Drive
20. Don Sites, 404 White Pine Boulevard
21. Kimberly Obremski, 412 White Pine Boulevard
22. Jeff Seewer, 209 Weeping Pine Boulevard
23. Patty Jo Jaynes c/o Janice Walthall, 500 White Pines Boulevard
24. Janice Walthall, 224 White Pine Boulevard

While none of these Plaintiffs had claims reaching the $75,000 threshold, those without foundation issues had claims amounting to less than $9,000 at the time the Second Amended Complaint was added – i.e., $185 x 44 months (from August 2020 to April 2024) = $8,140. In short, even if this Court had subject matter jurisdiction over Rebecca Eures' claims, it did not have subject matter jurisdiction over the later-added plaintiffs – certainly not those with only claims for overpayment of rent. Consequently, the Final Judgment entered on April 4, 20205 [Filing No. 112] must, at a minimum, be amended to vacate any judgment against these plaintiffs and remand their case back to the state court where it originated.

G. Conclusion Regarding Subject Matter Jurisdiction.

In conclusion, it is well established that subject matter jurisdiction is not an issue which may be consented to or waived – even after judgment. See, *United States v. Cotton*, 535 U.S. at 630. This case was removed to federal court on the erroneous assertion that Plaintiff Rebecca

Eures' settlement demand of $225,000 was evidence that her claims were in excess of the $75,000 jurisdictional threshold. As noted above and supported by the complete email exchanges between counsel, this $225,000 "demand" was actually an offer by Ms. Eures to Defendants to buy her home, with additional amounts to avoid future costs of litigation and avoid risking claims by other plaintiffs.

In email communications, Plaintiff's counsel plainly stated – with support from contractor estimates – that Ms. Eures' damages were only approximately $50,000. While she also asserted a breach of lease claim, these damages were only approximately $7,030. Together, her claims totaled only approximately $57,000 – far short of the $75,000 jurisdictional threshold.

Ms. Eures also asserted claims for punitive damages under theories of fraud and violations of the Deceptive Practices Act. However, both of those claims were "legally impossible" for the reasons stated above. As such, they are not included in calculating the jurisdictional amount. *Sykes v. Cook Inc.*, 72 F.4th at 205.

Therefore, this Court lacked subject matter jurisdiction over this case, and the Final Judgment must be vacated with the case remanded to the state court where it originated.[9]


H. <u>In the Alternative, Plaintiff Requests Counts I and III Be Dismissed Without Prejudice, to be Re-Filed in State Court</u>.

In the alternative, Plaintiffs request this Court amend its Order Granting Motions to Dismiss [Filing No. 109] and Final Judgment [Filing No. 112] and convert the dismissals of Count I (breach of lease) and Count III (negligence) to a dismissal "without prejudice" – leaving Count

---

[9] As noted above, if this case is remanded to state court, Plaintiffs will voluntarily abandon their fraud and statutory claims, seeking only adjudication of the breach of contract and negligence claims.

II (Deceptive Practices) and IV (Fraud) as dismissals "with prejudice." Plaintiffs can then re-file the claims embodied in Counts I and II in state court, where Plaintiffs believe this case should have remained.

As this Court correctly noted in its Order Granting Motions to Dismiss [Filing No. 109], "Generally, 'a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.'" *O'Boyle v. Real Time Resolutions*, 910 F.3d 338, 347 (7th Cir. 2018) (quoting *Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015))

Plaintiff Rebecca Eures has only amended her complaint once to make changes to the substantive claims or allegations.[10] The Plaintiffs added later have not amended their claims at all. Moreover, this is the first time any iteration of the Complaint has been dismissed. "When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013).

Here, Plaintiff's Count III for negligence was dismissed on the basis that the landlord had no duty to maintain adequate drainage in the neighborhood it owned, citing *Zubrenic v. Dunes Valley Mobile Home Park, Inc.*, 797 N.E.2d 802, 806 (Ind. Ct. App. 2003). Specifically, this Court stated: "Here, as in *Zubrenic*, the Court finds that no exception to the general rule that landlords do not have a duty once the property is possessed and controlled by the tenant applies to this case."

However, in this case, Plaintiffs alleged – or unartfully attempted to allege – that the property was never truly "possessed and controlled by the tenant[s]" in this case. Specifically,

---

[10] The Second Amended Complaint contained no changes to the claims or factual allegations. It simply added more plaintiffs, pursuant to Plaintiffs' Motion to Add Additional Plaintiffs. [Filing No. 48.]

16

Plaintiffs' Second Amended Complaint alleged that Defendants actively prohibited Plaintiffs from making changes to the property that would have stabilized the foundations under their homes, thereby avoiding the property damages alleged in the case. This was attempted to be set out in paragraph 82 of the Second Amended Complaint as follows:

> Pines LLC/Havenpark have prohibited Plaintiffs from making improvements to the foundations of their homes, to the drainage on their lots, and/or to their utility lines to ameliorate these problems. Instead, Pines LLC/Havenpark have asserted that Pines LLC/Havenpark – as the landlords and owners of the premises – have the exclusive right and power to make improvements or repairs to these facilities.

[Filing No. 71, p. 11.]

If Plaintiffs are given the opportunity to re-file their negligence claim in state court, they would clarify that Defendants never actually relinquished possession and control of the property to Plaintiffs and that Plaintiffs were therefore prevented from protecting their homes from damages caused by the shifting pedestals on which their homes rested.[11]

Similarly, on Plaintiffs' breach of contract claims, this Court held that Plaintiffs acquiesced to the increased rent and additional charges by continuing to remain on the premises and pay rent, citing *International Creative Management, Inc. v. D & R Entertainmet Co.*, 670 N.E.2d 1305, 1313 (Ind. Ct. App. 1996) and *Wang v. Sun*, 212 N.E.3d 1252 (Ind. Ct. App. 2023). However, Indiana law provides that contracts executed under duress, including economic duress, may be invalid if the coercion or threats are sufficient to deprive the victim of their free will. *Campbell v. Criterion Grp.*, 621 N.E.2d 342, 344 (Ind. Ct. App. 1993) (Summary judgment improperly granted to

---

[11] In addition, because Defendants insisted they retain control of the pedestal foundations and, obviously, the drainage throughout the neighborhood, Plaintiffs may be able to articulate a claim sounding in contract for these same damages. Although leases (whether written or unwritten) may have been silent on who has the duty to maintain proper drainage and who has the duty to maintain the pedestals supporting the homes, one party or the other obviously must have that duty. If the landlord is preventing the tenant from ameliorating a hazard, then the landlord logically must have assumed that duty.

landlord based on release of liability where tenants testified they were denied access to apartment to reclaim possessions unless they agreed to sign release.)

Here, this Court is not simply dealing with tenants of an apartment, who can pack up their belongings and move to a different apartment if rent is increased. Plaintiffs in this case own the homes, and moving to a new location costs tens of thousands of dollars. This obviously should have been mentioned in the Complaint – and would be in any refiling of the Complaint in state court. Moreover, if the owner of a mobile home simply moves out and is unable to move their house, Indiana law allows the landlord to proceed through a non-judicial process to have the house declared "abandoned" and take title to the home. Ind. Code § 9-22-1.5-2. Defendants and their employees have used this provision to obtain title to other homes in The Pines neighborhood, and Plaintiffs live under very real fear of losing their homes worth tens of thousands of dollars – i.e., Plaintiffs paid the increased rent under duress. Again, this should have been included in the original Complaint and would be included in any Complaint refiled in state court.

In short, Plaintiffs concede that Counts II and IV of their Second Amended Complaint [Filing No. 71] fail, and Plaintiffs have no objection to the dismissal of these counts with prejudice. However, Counts I (breach of contract) and III (negligence) can be cured through amendment. Plaintiffs therefore request this Court amend its Order Granting Motions to Dismiss [Filing No. 109] and Final Judgment [Filing No. 112] to merely dismiss counts I and III of the Second Amended Complaint without prejudice.

## CONCLUSION

According to the US Supreme Court, there is a presumption that a federal district court lacks subject matter jurisdiction over a particular case, and the burden is on the party asserting

jurisdiction – in this case, Defendants – to present evidence to establish jurisdiction. *Kokkonen*, 511 U.S. at 377. In this case, Defendants presented a pre-suit demand from Plaintiff, Rebecca Eures, for $225,000 as proof that her claim exceeded $75,000. However, as the complete pre-suit correspondence between counsel makes clear, this $225,000 "demand" was actually an offer by Ms. Eures to sell her house to Defendants – not a claim for damages she believed she could recover. Plaintiff's Counsel only quantified Ms. Eures' actual damages at $50,000. In addition, Ms. Eures (and members of the proposed class) had a claim for rent overpayment of roughly $7,030. These damages fell well short of the jurisdictional threshold of $75,000.

To the extent Plaintiff also alleged punitive damages under theories of either fraud or under the Deceptive Practices Act, these claims were "legally impossible." Therefore these punitive damages claims were not includable in calculating the amount in controversy. *Sykes v. Cook Inc.*, 72 F.4th at 205.

For these reasons, Plaintiffs request the Court vacate the Final Judgment for lack of subject matter jurisdiction and remand the case back to the state court where it originated. In the alternative, Plaintiffs request the Court at least amend the Final Judgment to dismiss the two potentially viable claims, Counts I and III of the Second Amended Complaint, without prejudice.[12]

---

[12] As a second alternative, all intervening Plaintiffs (i.e., all Plaintiffs other than Rebecca Eures) move that the judgment against them be vacated for lack of supplemental jurisdiction pursuant to 28 USC 1367(b) and remanded to state court.

Respectfully submitted,

/s/ J. David Agnew
J. David Agnew
Attorney No. 21531-49
LORCH NAVILLE WARD LLC
506 State Street – P.O. Box 1343
New Albany, IN 47151-1343
Telephone:  812.949.1000
Email:  dagnew@lnwlegal.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of April 2025, a copy of the foregoing was filed electronically.  Service of this filing will be made on all registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the court's system.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system:

| | |
|---|---|
| Edward M. O'Brien<br>Andrew Bokeno<br>Wilson Elser Moskowitz Edelman and Dicker<br>100 Mallard Creek Road, Suite 250<br>Louisville, KY 40207<br>Edward.obrien@wilsonelser.com<br>Aj.bokeno@wilsonelser.com<br>*Counsel for Defendants Havenpark Management, LLC and The Pines of New Albany, LLC* | Meghan E. Ruesch<br>C. Chase Wilson<br>Lewis Wagner LLP<br>1411 Roosevelt Avenue, Suite 102<br>Indianapolis, IN 45201<br>Mruesch@lewiswagner.com<br>Cwilson@lewiswagner.com<br>*Counsel for Defendant EMC Property and Casualty Company*<br><br>/s/J. David Agnew<br>J. David Agnew |